Jason Harrow
(Cal. Bar No. 308560)
GERSTEIN HARROW LLP
3243B S. La Cienega Blvd.
Los Angeles, CA 90016
jason@gerstein-harrow.com
(323) 744-5293

Charles Gerstein
(*pro hac vice* application forthcoming)
GERSTEIN HARROW LLP
810 7th Street NE, No. 301
Washington, DC 20002
charlie@gerstein-harrow.com
(202) 670-4809

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| PETER CLUNE and CHAD LODER,<br><br>    Plaintiffs,<br><br>        vs.<br><br>THE CITY OF LOS ANGELES;<br>DEPUTY CHIEF ALFRED LABRADA,<br>in his individual and official capacities;<br>and LIEUTENANT JAPHET HOM, in<br>his individual and official capacities,<br><br>    Defendants. | Case No. 21-cv-1475<br><br>**COMPLAINT**<br><br>**Date: March 4, 2022** |

1. Plaintiff Chad Loder criticized former Los Angeles Police Department Captain Rick Stabile in an online forum on Twitter that Stabile had created for discussion of official business. Because Stabile apparently disliked the viewpoint that Loder expressed, Stabile deleted Loder's speech and barred Loder from the forum. Loder sued Stabile on the grounds that the First Amendment forbids Stabile's censorship. That proceeding remains ongoing. In that litigation, Loder learned that the City of Los Angeles adopted a policy and practice that violates the First Amendment because it purports to permit officers to block speakers if the officers claim that the speech "impacts public or officer safety." This standard does not comply with the First Amendment, and, even if it did, it has been implemented in a way that does not comply with the First Amendment because LAPD believes that almost any criticism of its conduct could "implicate" officer safety by conceivably encouraging listeners to threaten officers.

2. Months later, Plaintiff Peter Clune was blocked from two other official Twitter accounts of LAPD officers. Clune has frequently tweeted pictures of LAPD officers not wearing masks when required and, using twitter, filed complaints against the officers in the pictures. In response to these tweets, and pursuant to LAPD policy, Deputy Chief Al Labrada and Lieutenant Japhet Hom both blocked Clune based on the content and viewpoint of his speech.

3. This Complaint seeks to enjoin the unconstitutional policy and practice and require Defendants to unblock Clune and all others who have been unconstitutionally blocked.

**Parties**

4. Plaintiff Peter Clune is a Los Angeles County resident and documentary producer whose work focusses on socially impactful projects. His work has appeared

on PBS, Showtime, and at the Sundance Film Festival, DOC NYC, the Tribeca Film Festival, and the Toronto International Film Festival.

5.     Plaintiff Chad Loder is a Los Angeles County resident who is active in local politics. As a writer and activist, Loder holds public officials to account, among other ways, by commenting on their policy positions using twitter. Loder has a substantial following of more than 115,000 followers. In addition to their[1] work as an activist, Loder is a recognized security expert. Loder founded multiple digital security companies and serves on the faculty of the Institute for Applied Network Security.

6.     The City of Los Angeles is a municipal corporation.

7.     Deputy Chief Alfred Labrada is an LAPD Deputy Chief and Commanding Officer in its Central Bureau. He uses the twitter account @LabradaAl as his official twitter account. He is sued in his official and personal capacities.

8.     Lieutenant Japhet Hom is an LAPD Lieutenant and Commanding Officer of the LAPD's South Traffic Division. He uses the twitter account @LAPDCaptainHom as his official twitter account. He is sued in his official and personal capacities.

## Jurisdiction and Venue

9.     Loder and Clune bring this action pursuant to 42 U.S.C. § 1983, and this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10.     Venue is proper in this district because the events complaint of occurred in this district and this Court may exercise general (and specific) personal jurisdiction over the City of Los Angeles, Labrada, and Hom.

## Twitter: Background and Blocking

11.     Twitter is a social-media platform on which users can send messages of a limited length to the public.

---

[1] Loder uses the pronouns "they," "them," and "their."

12.     Users are identified by a unique name of their choosing, called a handle. Handles begin with the "@" character. (This leading character is sometimes unsaid or sometimes pronounced as "at," like in an email address.)

13.     Users can post messages (tweet), respond to the messages of others (reply), republish the messages of others (retweet), or convey approval of others' messages (like).

14.     All of a user's twitter activity is collected on a continuously updated page, called a timeline. The timeline page contains a user's handle alongside optional graphics, followed by an optional short description of the user (called a bio), followed by buttons to view the user's tweets; tweets and replies; media, including videos and photographs; and likes. For instance, as of May 26, 2021, Stabile's bio and heading appeared as follows, with the timeline buttons underneath:



COMPLAINT IN 21-cv-1475

15.     The "tweets" option is the default selection for what appears next. Users may choose to "pin" a tweet, which causes that tweet to appear first whenever users view tweets on their timelines. The pinned tweet, if there is one, is then followed by additional tweets in reverse chronological order, interspersed with advertising or promotional content. As of May 26, 2021, a recent section of Stabile's "tweets" feed appears as follows:



16.     When a user replies to another user's tweet, a comment thread is created. On this thread, users can see and reply to the original tweet, replies to the original tweet, replies to replies to that tweet, and so on. For example, clicking on one

of Stabile's tweets from April 18, 2021, reveals many comments, the first several of which appear as follows:



17.     Users can identify topics of conversation using the symbol #, called a hashtag. When a user inserts a hashtag, a link is created and any user who clicks on it can see all of the tweets, retweets, and replies containing that hashtag.

18.     Users can choose other users whose activity they want to follow. When one user follows another, all of the followed user's tweets, replies, and retweets appear on a continuously updated page created for the following user, called a feed.

19.     Twitter users can bar other users from interacting with them and their tweets, and from participating in the debate that the original user started, by taking

an action called "blocking." When one user blocks another, the blocked user cannot see the blocking user's tweets, replies, or retweets, and the blocking user cannot reply to, retweet, or like the blocking user's twitter activity.

20.     When a user blocks another user, the blocking user bars the blocked user from all comment threads created by the blocking user's tweets and from the blocking user's timeline. This means that blocked users cannot express their views regarding blocking users' tweets to the people to whom blocking users send tweets, retweets, or replies.

21.     When someone who has been blocked attempts to view the entire feed or a single tweet of the blocker, the blocked user instead sees a message indicating that, indeed, the user has been blocked. The message looks like the following:



22.     Users may cause other users' tweets not to appear in their feeds, an action called "muting." Whereas blocked users cannot post replies visible to the blocking users' followers, muted users are disabled from communicating with only the muting users themselves; muted users can still participate in the conversations created by muting users' tweets.

**<u>Stabile Blocked Loder, Based on The Viewpoint Loder Expressed, After Consulting With an Official Who Applied an Unconstitutional Policy</u>**

23.    On May 24, 2021, Stabile tweeted: "Unfortunately we continue to see dramatic increases in violent crime. ◆Murder: 131 people (21.3 % increase). 39% are gang related. ◆Victims shot: 548 people (67.1 % increase). ◆ We are averaging 9 shots fired incidents a day. ◆ Appox. 12 people are shot every 3 days."

24.    To this, Loder replied in the comment thread on May 25, 2021: "All of this after we increased LAPD's budget, too! Proof that massive police budgets don't prevent crime. Maybe we should try another strategy for a change."

25.    Minutes later, Loder added another comment to the thread, adding: "To refresh your memory, here is a video of Capt. Rick Stabile telling a victim of a violent hate crime (committed in the presence of LAPD officers) that she'd have to perform a citizen's arrest. We pay Stabile over $300k per year in total compensation."

26.    The tweet contained a link to a 53 second video of Stabile interacting with an individual in Los Angeles. That video can be viewed embedded in the tweet at https://twitter.com/chadloder/status/1397222566637580306?s=20.

27.    That same day, May 25, 2021, Stabile blocked Loder.

28.    On or about the same time, Stabile used the "hide reply" feature on tweets of Loder and others. Using this feature also has the impact of reducing or eliminating the visibility of certain tweets.

29.    Stabile blocked Loder because he disagreed with the viewpoint expressed in Loder's replies. As explained below, Stabile regularly allowed responses about crime in the Los Angeles area and around the country, so long as they are not critical of the currently prevailing approach to policing in this Country. Indeed, Stabile has explicitly criticized Los Angeles County District Attorney George Gascon's approach to reducing lengthy sentences for certain kinds of crimes.

30.     Before blocking Loder, Stabile consulted with Captain Stacy Spell. Spell is responsible for implementing a policy derived from a document "Procedures and Guidance for Official Department and Personal Social Media Accounts." That document is dated October 19, 2018.

31.     The document contains a section called "Blocking" that provides, in full, "Employees using an official Department social media account generally should not block or mute users or followers unless failure to do so impacts public or officer safety. Absent exigent circumstances, personnel shall first consult with the PID for direction prior to blocking or muting a user participating in an official Department social media account."

32.     Spell approved the block of Loder after Stabile told Spell that Stabile was "afraid for his and his family safety because Plaintiff had tweeted the same accusation and video back in January 2021, along with other untrue accusations, and that as a result of Plaintiff's tweets, he received threats on his Department email account at that time."

33.      It is not clear whether Spell asked for or saw any actual evidence of any threat or risk to officer or public safety before Spell approved the block.

34.     Loder's tweets did not lead to any actual risk to officer or public safety, and they certainly did not lead to any "true threats" as that term has been interpreted by the Supreme Court. Stabile received zero email communication of any kind that referenced Loder or Loder's tweets.

35.     Instead, from the period from January 6, 2021 to May 25, 2021, Stabile appears to have received six emails that he subjectively considered to post a risk to his safety.

36.     Three were Biblically inspired rants addressed to multiple officers that no reasonable person could construe as directed toward Stabile specifically or connected to Loder in any way.

37.     One, dated March 26, 2021, had subject "Insurrection" and body "All traitors deserve death." There was no reference to Loder in any way nor risk to officer or public safety.

38.     One, dated March 12, 2021, had subject "you're racist" and body "you refused to arrest the violent trump supporters but arrested the counterprotesters who defended themselves. You're racist. shame on you." This email presents no risk to public or officer safety, nor any mention of Loder.

39.     One, dated January 12, 2021, has subject "LAPD" and body "Why are you such a coward? I hope someone takes you out while on duty." There is no mention of Loder, and no direct threat to Stabile or his family.

40.     Stabile retired in the fall of 2021.

41.     Stabile never unblocked Loder while he was still with the LAPD.

### Later, Labrada and Hom Blocked Clune, Based on The Content And Viewpoint That Clune Expressed

42.     For much of 2021 and thus far in 2022, upon information and belief, the LAPD has had in place a policy that requires LAPD officer to wear a facemask (to protect against coronavirus transmission) "whenever in public or in the workplace."

43.     On January 18, 2022, at 11:43 pm pacific time, Peter Clune, from the @peter_clune account, retweeted a photo of Labrada giving remarks in an indoor theater, and Clune tweeted above it "@OIGLABOPC please investigate Al Labrada for not following LAPD mask policy." The @OIGLABOPC is the twitter account for the LAPD Office of the Inspector General.

44.     By the next morning, January 19, 2022, Labrada had blocked Clune. At 9:13 am pacific, Clune tweeted a photo indicating that Labrada had blocked the account with the commentary "If you want to get blocked by an LAPD Deupty [sic] Chief all you need to do is quote tweet their pictures of maskless officers."

45.     Using another method, Clune went back through Labrada's account, found additional pictures of him and other officers violating the mask policy, and tweeted the Office of Inspector General to investigate. Clune, however, could not see Labrada's tweets while logged into his primary account, nor could Clune interact further in a meaningful way in the public forum that Labrada created.

46.     Later that day, 4:53 pm, Clune realized that Hom had also blocked him. At that time, he tweeted a picture of a maskless officer with the text "@OIGLABOPC Failure to supervise for Al Labrada and @lapdcaptainhom (who has now blocked me) approvingly tweeting and retweeting photos of Officer Millan violating mask policy. And also a complaint against Officer Millan for not wearing a mask."

47.     Clune remains blocked from the Hom account, though appears to have been unblocked from the Labrada account at some unknown time.

### All Officers' Twitter Accounts Were Marked With The Trappings of Their Offices And Used For Official Business

48.     Stabile's twitter handle is @LAPDRickStabile.

49.     Stabile created this account in September 2015, and the account's owner is listed as being based in Los Angeles, California. Stabile has expressly acknowledged that this account was created and maintained as part of his official duties.

50.     As of May 27, 2021, 2,107 users followed Stabile's account and Stabile follows the accounts of 947 users.

51.     The timeline for Stabile's account began with a short description: "Commanding Officer Hollenbeck Area, Los Angeles Police Department."

52.     There were two photos on the profile. The smaller, inset photo featured what appears to be Captain Stabile in uniform, smiling at the camera. The background image featured a building that reads "POLICE" on its side. The photo is

relatively low resolution, but the image appears to be a photo of the LAPD's Hollenbeck Station. These images are reproduced at Complaint ¶ 9.

53.   Twitter also gives users a place to add a URL to a static website. That URL was lapdonline.org, the official website of the LAPD.

54.   The only current professional activity identified on Stabile's description of his twitter account was his position as an LAPD officer.

55.   When Stabile wished to block Loder, Stabile consulted with LAPD personnel and followed official LAPD policy.

56.   Pursuant to City policy, @LAPDRickStabile was an official account sponsored by the City of Los Angeles.

57.   In 2020 and 2021, Stabile posted dozens of tweets.

58.   Essentially all of these tweets are communications with members of the public about public business.

59.   Stabile did not use any other twitter account for communicating with the public about public business.

60.   Labrada's twitter account has many of the same features as Stabile's. The @LabradaAl account's name is listed as "LAPDAlLabrada"; the main profile photo has a picture of a "Deputy Chief" badge; the bio line says "Commanding Officer, Operations Central Bureau 251 East 6th Street, LA Ca 30398@lapd.online"; and the website is "LAPDOnline.org."

61.   The content of the account also indicates official use. Among other things, Labrada uses the account to communicate official messages, like "Our officers are out and about, you will notice an increased officer presence throughout the city tonight. The @LAPD_CTD Street Racing Task Force are also working hard to ensure your safety on the roads." (January 30, 2022.) He frequently retweets official messages from accounts like @LAPDHQ and @LAPDWilshire. And he has posted official videos of him in uniform addressing public safety issues, like his message

regarding celebratory gunfire in the tweet "important message regarding New Years Eve Celebration," which was issued in both English and Spanish. (December 30, 2021).

62.    To Plaintiffs' knowledge, Labrada does not use any other twitter account for official business.

63.    Hom's twitter account has many of the same features as Stabile's and Labrada's. The @LAPDCaptainHom account's name is listed as "Capt J. Hom"; the main profile photo has a picture of a "Los Angeles Police" logo; the bio line says "Commanding Officer, South Traffic Division"; and the website is "LAPDOnline.org."

64.    The content of the account also indicates official use. Among other things, Hom uses the account to communicate official messages, like "Today, Southwest SLOs and STD motors escorted our first Peace Ride of 2022 to Venice Beach in stop senseless violence & support community safety.  Great community support & partnership!" (January 23, 2022). He frequently retweets official messages from accounts like @LAPDPIO and @LAPDSouthTraff, including official press releases and messages. And he has posted official "community alerts" with brief additional commentary, like "While shopping & eating out this holiday season, please follow a few safety tips from the LAPD and Central Area to keep you & your family safe!" plus an image of the full LAPD Community Alert. (December 11, 2021).

65.    To Plaintiffs' knowledge, Hom does not use any other twitter account for official business.

## The Social Media Guidelines Are a Citywide Policy, And Spell Implemented a Citywide Practice

66.    The LAPD and its officers operate many official twitter accounts that conduct official business. These include the @LAPDHQ account, which has 215,000 followers and is the official account of the LAPD broadly; division accounts, like @LAPDHollywood, which has 37,600 followers and is the official account of the LAPD

Hollywood division; and individual officer accounts, like Stabile's and, for example, @LAPDCurtin, which has 427 followers and is the official account of the Commanding Officer of the Southeast Patrol Division. Upon information and belief, there are many dozens of official accounts. Indeed, the LAPD has encouraged high-ranking officers to create official accounts to increase transparency and communicate efficiently with the public.

67.    All these accounts are governed by the same unconstitutional policy that permits blocking whenever an officer claims that failing to censor speech (by blocking) "impacts public or officer safety." This policy permits officials to block speech protected by the First Amendment based on its content or viewpoint. Although the Supreme Court has held that "true threats" can constitute unprotected speech—that is, "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," *Virginia v. Black*, 538 U.S. 343, 359 (2003)—it has never held that speech that "impacts public or officer safety" is unprotected by the First Amendment.

68.    The actual practice of implementing this policy makes it even more constitutionally suspect. Officers do not need to provide evidence of, or justify in any way, the supposed impact to public or officer safety of permitting the objectionable speech to remain in the forum. Rather, the LAPD permits blocking based on mere assertions that an officer subjectively felt the speech meets this standard, with no proof required.

69.    And even if evidence were required, LAPD blocks users because the content or viewpoint of their protected speech may have motivated *third parties* to send threatening messages.

70.    Worse, the LAPD blocks users based on receipt of messages that are not connected to the speech that the officer dislikes and do not in fact present any meaningful risk to officer or public safety.

**Loder and Clune Will Almost Certainly Be Blocked Again Pursuant to The City's Policy**

71.     Loder frequently criticizes LAPD officers and LAPD policy and he intends to continue doing so in the future. Clune frequently tweets photos of LAPD officers not adhering to mask requirements and files complaints, and he intends to continue doing so in the future.

72.     The City's official policy is to permit blocking of critics from official twitter accounts whenever unrelated third parties criticize the City in a way that (in the subjective, unreviewable judgment of one or perhaps two LAPD employees) "impacts" public safety.

73.     Given the heated debate surrounding policing across the country, Loder and Clune can never be sure whether third parties over whom they have no control will respond to his criticism by sending messages to the LAPD or its officers.

74.     Loder's and Clune's tweets are almost certain to meet this standard because unrelated third parties frequently send messages to LAPD that Loder and Clune have nothing whatsoever to do with and which supposedly impact public or officer safety.

**Claim for Relief**

***Count One*:**
**Viewpoint Discrimination in Violation of the First Amendment**
**(42 U.S.C. § 1983)**

75.     Plaintiffs incorporate all prior paragraphs here.

76.     Officer Stabile violated Loder's constitutional rights by blocking Loder on the basis of the content in the @chadloder twitter account, and the viewpoint expressed by that account.

77.     The violation occurred as a result of the City of Los Angeles's adherence to an unconstitutional written policy.

78.    Although the policy itself is unconstitutional by its terms, the manner in which the City implements it and puts it into practice is likewise unconstitutional.

### *Count Two*:
### Viewpoint Discrimination in Violation of the First Amendment
### (42 U.S.C. § 1983)

79.    Plaintiffs incorporate all prior paragraphs here.

80.    Officers Labrada and Hom violated Clune's constitutional rights by blocking Clune on the basis of the content in the @peter_clune twitter account, and the viewpoint expressed by that account.

81.    The violation occurred as a result of the City of Los Angeles's adherence to an unconstitutional written policy (or its practice of failing to adhere even to that unconstitutional policy).

82.    Although the policy itself is unconstitutional by its terms, the manner in which the City implements it and puts it into practice is likewise unconstitutional.

### **Prayer for Relief**

Plaintiffs respectfully request:

- An injunction requiring the City to un-block Loder and Clune from any official twitter accounts and forbidding the City to block or permit any of its employees to block Loder and Clune from any official twitter account that is (a) used as an unlimited public forum, unless the blocking issues in response to speech categorically unprotected by the First Amendment; or (b) used as a limited public forum unless the blocking is justified by reasonable rules aimed at forwarding the purpose of the limited public forum;

- A declaratory judgment that the decisions to block Loder and Clune from the officers' respective official twitter accounts violated the First Amendment and that the written policy and actual practice of blocking is unconstitutional;

- An award of $1 in nominal damages to Loder and $1 in nominal damages to Clune;

- An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

- All other relief that this Court may consider just and proper.

1

2          Respectfully submitted,

3          */s/ Jason Harrow*

4          Jason Harrow
           (Cal. Bar No. 308560)
5          GERSTEIN HARROW LLP
           3243B S. La Cienega Blvd.
6          Los Angeles, CA 90016
           jason@gerstein-harrow.com
7          (323) 744-5293

8
           Charles Gerstein
9          (*pro hac vice application forthcoming*)
           GERSTEIN HARROW LLP
10         810 7th Street NE, Suite 301
           Washington, DC 20002
11         charlie@gerstein-harrow.com
           (202) 670-4809
12

13         *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28